SIGNED THIS: January 22, 2014

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LARRY STONE and BARBARA STONE, | ) | Case No.  13-80630 |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

On December 19, 2013, the Court held a trial on the Chapter 7 Trustee's objection to certain personal property exemptions claimed by the Debtors on Amended Schedule C and on the Trustee's Motion to Compel Turnover of certain items of personal property for sale. The Debtors testified, as did their lawyer, William Breedlove.

The Debtors filed their chapter 7 petition on March 29, 2013, along with their schedules. They listed their residential real estate, their vehicles and all other personal property as jointly owned. The Debtors are both retired and are receiving social security and pension income.

On their initial Schedule B, the Debtors listed a category of unitemized miscellaneous household goods "no item over $400," placing an aggregate value on those

goods of $2,500.00. They did not separately disclose a John Deere lawn tractor that they purchased in 2006 or 2007 for $12,000. The Debtors admitted that the Trustee asked at the 341 hearing whether the filed papers were accurate and whether they had listed all of their property, to which they responded affirmatively. Neither Debtor disclosed the Deere tractor to the Trustee at the 341 hearing.

The Trustee hired Monte Lowderman to inspect and appraise the Debtors' personal property. Mr. Lowderman met with Mrs. Stone at the house in July, 2013, and conducted a complete inspection and appraisal for two and one-half hours. The Deere tractor was parked in plain view in the side yard. When Mr. Lowderman inquired as to its ownership, Mrs. Stone responded that she and her husband owned the tractor. Mr. Lowderman valued the tractor at $9,000 and a Deere utility wagon at $175.00.

Subsequently, the Debtors retained their own appraiser who valued the Deere tractor at $4,000 and the utility wagon at $65. On October 2, 2013, the Debtors amended Schedule B to list the Deere tractor with the value of $3,900 and tools, not separately listed previously, at a value of $2,000. Both original Schedule B and Amended Schedule B list bank accounts at Blackhawk State Bank as jointly owned.

## DISCUSSION

**Joint Ownership of Property**

One of the main issues at trial was whether the Deere tractor and the tools were owned jointly by the Debtors or solely by Mr. Stone. The Trustee relies upon the Debtors' testimony that Mr. Stone purchased the Deere tractor and obtained a purchase money loan

2

in his name only. He is the primary user of the tractor although Mrs. Stone has operated it on several occasions. Mr. Stone also purchased all of the tools and has been the primary user of the tools, having used some in respect to his former job as a truck driver.

In Illinois, married persons may own property jointly or separately during the marriage. Ownership of assets between spouses is a question of intent. *In re Snyder,* 436 B.R. 81, 88-89 (Bankr.C.D.Ill. 2010). The Stones both testified that they consider all of the property and assets that they have to be jointly owned, including the tractor and tools. Their testimony in this regard is unimpeached.[1] No circumstantial evidence contradicted this direct evidence of joint ownership intent. The Debtors have been married for 50 years and there was no evidence that they ever maintained separate ownership of any property or assets. The fact that only Mr. Stone signed the purchase money note for the tractor reflects the lender's credit decision, but in no way contradicts the assertion of joint ownership. Similarly, there is no evidence that the tools were intended to be owned separately and solely by Mr. Stone. The Court is persuaded by the Debtors' testimony that all of their assets are jointly owned: "they are all ours." This determination also comports with the fact that for 50 years the Debtors have never maintained separate ownership of any accounts, property or other assets.

At trial, the Trustee did not attempt to prove that the funds used to pay for the tractor and the tools were not jointly owned funds. Their bank accounts are jointly owned.

---

[1] At one point during her testimony, Mrs. Stone stated that she does not "own" the tools, but she appeared confused and was not aware of the distinction being made as to separate ownership. The Court believes her testimony that all of the property is "ours" to reflect her true intent as to joint ownership.

It has long been part of the common law of Illinois that a deposit by one of two joint account holders into a joint bank account is rebuttably presumed to be a gift that vests equal and full ownership of the funds in the non-depositor. *In re Schneider's Estate*, 6 Ill.2d 180, 127 N.E.2d 445 (1955); *In re Estate of Shea,* 364 Ill.App.3d 963, 848 N.E.2d 185, 302 Ill.Dec. 185 (Ill.App. 2 Dist. 2006); *In re Tucker,* 430 B.R. 499, 502 (Bankr.N.D.Ill. 2010). The only bank accounts listed on Schedule B are identified as joint accounts and there is no evidence in the record that Mr. Stone ever maintained a sole account at any time during his marriage. Presumably, the tractor and tools were paid for with funds drawn from the jointly owned accounts, which supports the Debtors' contention of joint ownership of these purchased assets. Based on her joint ownership, it follows that Mrs. Stone's wildcard exemption is available to be used on the tractor and tools, unless denied for other reasons.

**Tools of the Trade Exemption**

Mr. Stone testified that he regularly uses the Deere tractor to mow not only his lawn, but also the lawns of several neighbors, a nearby library and a couple of baseball diamonds. His neighbors pay him for the mowing, but he receives no remuneration for mowing the library or ball diamonds. In the winter, he also occasionally uses the tractor to plow the driveway of a neighbor, but accepts no pay.

The Debtors disclosed no income from mowing on Schedule I. Mr. Stone testified that while he may receive a total of $2,500 to $3,000 per year from his neighbors, he nets very little once expenses are factored in. The net income is so insignificant that Mr. Stone stated he did not feel compelled to disclose it on the schedules.

In order to qualify for the "tools of the trade" exemption under 735 ILCS 5/12-1001(d), a debtor must be engaged in a trade. In general, "trade" means occupation, profession or calling; the business one practices; the means of livelihood. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (1976). Synonyms for "trade" include occupation, profession and business. *See Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton,* 105 Ill.2d 389, 397, 475 N.E.2d 536, 86 Ill.Dec. 322 (1985). The tools of the trade exemption has been narrowly construed to protect debtors from losing the tools needed to earn a living. *In re Hively,* 358 B.R. 752 (Bankr.C.D.Ill. 2007)(Gorman, J.).

Schedule I discloses that the Debtors receive $5,538 each month in Social Security and pension income, which totals $66,456 per year. Given Mr. Stone's testimony that he grosses $2,500 per year in mowing income, and nets far less, it can hardly be said that mowing constitutes his means of livelihood. In addition, line 29 of Schedule B requires itemization of machinery and equipment used in business, for which the Debtors checked "None." Moreover, he does not advertise his mowing services or otherwise hold himself out to the general public as offering mowing for hire. Mowing the yards of several neighbors for nominal pay does not make that his "trade" as that term is used in 735 ILCS 5/12-1001(d). The claim of exemption under that provision is not allowable.

**Failure to Disclose**

A chapter 7 trustee is charged with collecting and reducing to money the property of the estate. 11 U.S.C. § 704(a)(1). A debtor must cooperate with the trustee's

5

investigation into and liquidation of nonexempt assets. 11 U.S.C. § 521(a)(3). Debtors have an affirmative duty to voluntarily make a full and accurate disclosure of all legal and equitable interests in property, exempt and nonexempt alike. *Matter of Yonikus,* 996 F.2d 866 (7th Cir. 1993). A debtor's duty to report all assets is absolute, even if they believe an asset is worthless or unavailable to the estate. *Matter of Yonikus,* 974 F.2d 901, 904 (7th Cir. 1992). The voluntary disclosure requirement maintains the integrity of the bankruptcy process by insuring that neither the trustee nor the creditors needs "to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *In re Tully,* 818 F.2d 106, 110 (1st Cir. 1987).

Deliberate concealment of or failure to disclose an asset may justify denial of an exemption in that asset. *Hardage v. Herring Nat. Bank,* 837 F.2d 1319, 1324 (5th Cir. 1988); *Payne v. Wood,* 775 F.2d 202 (7th Cir. 1985); *Matter of Doan,* 672 F.2d 831 (11th Cir. 1982). Although schedule amendments are liberally allowed, exceptional circumstances may preclude a debtor from correcting a prior omission with an amended schedule. An amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties. *Yonikus,* 996 F.2d at 872. Bad faith or prejudice must be shown by clear and convincing evidence. *Id.*

The omission of an asset may be sanctionable when made with the intent to hide the asset or conceal its true value from the trustee, or where the debtor exhibits a reckless disregard for the accuracy of the schedules. Apart from outright omission, another possible form of concealment or bad faith may occur where relatively valuable assets are

listed but described in vague or misleading terms, or are lumped together in general categories so as not to attract attention. While debtors are not expected to individually itemize every single possession, the required level of itemized disclosure rises as the value of the items increases. *Payne v. Wood,* 775 F.2d at 205-06. "The debtor must furnish enough information to put the trustee on notice of the wisdom of further inquiry." *Id.* at 206.

Debtors are personally responsible for the accuracy of the information contained in their schedules whether or not they have been assisted by counsel. *In re Rolland,* 317 B.R. 402, 414 (Bankr.C.D.Cal. 2004); *In re Pettey,* 288 B.R. 14, 20 (Bankr.D.Mass. 2003). No matter how willing an attorney may be to fall on his sword and assume responsibility for errors and omissions, the debtor's personal responsibility is generally nondelegable.

> Nor can an attorney's willingness to bear the burden of reproach provide blanket immunity to a debtor; it is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules. *See Mascolo,* 505 F.2d at 277 n.4; *In re Russell,* 52 F.2d 749, 754 (D.N.H.1931); *Nazarian,* 18 B.R. at 147. A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.

*Tully,* 818 F.2d at 111 (1st Cir. 1987).

At trial, attorney Breedlove made a noble effort to accept full responsibility for the omission of the John Deere lawn tractor from Schedule B. Although the Debtors told him they owned a "mower," Mr. Breedlove claimed that because he is young and naive and not familiar with lawn tractors, that he failed to ask the Debtors follow-up questions about the kind of mower and its value. Mr. Breedlove assumed the Debtors were referring to a small push-mower. As such, Mr. Breedlove assumed that it was acceptable to include the mower

7

in the aggregated disclosure for miscellaneous household goods, no item over $400, valued together at $2,500.

What the Debtors called a mower is, in fact, a 2007 John Deere X729 Lawn Tractor, 4x4 with 54" mower deck, and a #15 lawn trailer, purchased new by the Debtors for $12,000. The Debtors' own appraiser valued the tractor at $4,000, plus $65 for the trailer. The Trustee's appraiser valued the tractor at $9,000 and the trailer at $175.[2] The Debtors point out that they did not conceal the Deere tractor from the Trustee's appraiser and honestly admitted to him that they owned it when he asked about it.

The attorney's desire to shoulder the blame and protect the Debtors is unavailing. The Debtors knew what type of lawn tractor they owned and knew it was worth thousands of dollars. They certainly realized the tractor was not an item worth not more than $400. It was incumbent upon them to give their attorney, who was responsible for inputting the information on the schedules, the details needed to ensure accurate disclosure. Instead, the Debtors gave the attorney a vague and misleading identifier, the word "mower," and then failed to take seriously their duty to review the schedules for accuracy before signing them. So it was the Debtors, not the attorney, who caused and are responsible for the omission.

While it is true that the Debtors' honesty with the Trustee's appraiser dispels the notion that they were overtly engaged in an ongoing scheme of fraudulent concealment, such as might justify denial of the discharge, they violated their duty of making voluntary and full disclosure of assets on their schedules by failing to clearly disclose one of their three most valuable items of personal property (along with two cars). Denial of any

---

[2]The Court is not today determining the value of the Deere tractor, but Lowderman's value of $9,000 is difficult to understand. It seems highly doubtful that a 6-year old lawn tractor with over 700 hours of usage could be sold by a non-dealer for 75% of its purchase price.

8

exemption in the tractor is an appropriate and sufficient sanction.[3]

The Trustee also seeks denial of any exemptions in the tools for nondisclosure. The schedule of personal property filed with the petition does not itemize the tools or list a collective category labeled "tools." The Debtors contend that the tools were included in the category for miscellaneous household goods, no item over $400, with an aggregate value of $2,500. Like the Deere tractor, the tools were not specifically disclosed in the Debtors' initial schedules or at the first meeting of creditors. The Trustee argues that the tools were first discovered by her appraiser in July, 2013. She concedes, however, that the Debtors freely disclosed the tools to the appraiser and in no way sought to conceal them from him.

According to the Trustee's appraiser, Monte Lowderman, the Debtors own a wide variety of tools that he valued at $2,980. No single tool exceeds a value of $350. Lowderman aggregated a tool chest and all of the tools it contained, including thirteen kinds of tools or tool sets, valuing it all at $825. The Debtors' appraiser, Tom Kilcoin, conducted his appraisal in November, 2013. Kilcoin listed thirteen categories of tools. The highest single value was $300. The total appraised value was $1,595. None of the tools are claimed exempt by the Debtors as tools of a trade. On Amended Schedule C, the only exemption asserted in the tools is $500 in value of Mrs. Stone's wildcard exemption.

The Trustee argues that she has carried her burden to prove that the Debtors fraudulently concealed the tools because "tools" were not specifically listed on Schedule B and because the Debtors failed to refer to "tools" at the first meeting. Based on the values placed on the tools by the Debtors' appraiser, however, it is plausible that the Debtors

---

[3] Denial of exemption rights does not prevent the Debtors from retaining the tractor by buying out the Trustee's interest for a negotiated cash settlement.

9

intended, in good faith, to include the tools in the general category for miscellaneous household goods.

Initial Schedule B includes three categories that are so general in description as to necessitate further inquiry by the Trustee: miscellaneous household goods, collectibles and office equipment. The Court would expect any trustee faced with such general descriptions to ask the debtor at the first meeting to identify what items of property were included in those categories. If the Trustee asked the Debtors to identify the kinds of property included in miscellaneous household goods, and the Debtors failed to identify "tools" as included, that omission would be evidence of an intent to conceal the tools. No such evidence was presented at trial. The only evidence of the Debtors' first meeting testimony was that the Debtors were asked the general question whether the information on their schedules was true and correct to which they responded affirmatively. To the extent they intended to include the tools within the listing for miscellaneous household goods, which is their argument, their answer cannot be determined to be false.

Tools can vary widely in terms of quantity, quality and value. A full set of Snap-on tools may be quite valuable, while the same quantity of tools from a variety of bulk manufactures, acquired here and there over a period of years, may be worth little. The greater the value, the higher the burden to itemize on Schedule B. Based upon both appraisals, it does not appear that the tools owned by the Debtors are made by premium manufactures or have the kind of obvious value that would necessitate item by item listing

Document Page 11 of 12

on Schedule B.[4] Clear and convincing proof of fraudulent concealment has not been made.

Finally, the Trustee correctly points out that the Debtors have claimed an excessive exemption in the 2007 Chevy Impala. As capped by 735 ILCS 5/12-1001(c), a debtor's exemption in any one motor vehicle may not exceed $2,400, absent wild card stacking. So Mr. Stone's exemption under section 12-1001(c) is limited to $2,400.

## CONCLUSION

All of the personal property is determined to be jointly owned by the Debtors. The Trustee's request that certain exemptions be denied or limited on the theory of individual ownership will be denied. The Deere tractor does not qualify as a tool of a trade. The exemption claimed under 735 ILCS 5/12-1001(d) will be disallowed. The exemption claimed by Mr. Stone in the 2007 Chevy Impala is limited to $2,400. Any claim of exemption above that amount will be denied.

The Trustee has not carried her burden to prove fraudulent concealment of the tools. Her request to deny any exemption in the tools will be denied. The Trustee has carried her burden to prove fraudulent concealment of the Deere tractor. As a sanction, no wildcard exemption in the Deere tractor will be allowed.

---

[4] Of course, debtors may avoid being accused of concealment by avoiding the use of general categories and specifically itemizing their property on Schedule B, even if attachments are required to be filed. The schedules are intended to assist (not hinder) the trustee's evaluation of whether nonexempt assets should be independently appraised and/or sold. The use of overly general categories to schedule personal property invites confusion over what is and is not included and injects uncertainty about how aggregate values are computed. In addition, it puts the debtors in the difficult position of having to explain descriptions and values on schedules that may have been concocted by their lawyers (or the lawyers' staff) and about which the debtors' knowledge is incomplete or memory is vague. While the duty of full and accurate disclosure is on debtors, they don't usually personally prepare the finished schedules, so they depend upon their lawyer and the lawyer's staff for the words and amounts used. More specificity means less confusion, fewer instances of forgetfulness, and less opportunity for an omission. The debtors and their attorneys may easily avoid the negative consequences of omitting assets by paying careful attention to Schedule B. Disclose, disclose, disclose.

This Opinion disposes of the issues raised in the Trustee's objection (Doc. 42) to Amended Schedule C. The Court has intentionally not addressed the issues raised in the Trustee's Motion to Compel Turnover (Doc. 34), as the Debtors may wish to file a Second Amended Schedule C, which may affect the issue of turnover of assets. In addition, the Debtors should quickly attempt to reach a settlement with the Trustee to resolve the turnover issues. The Debtors will be given fourteen days to file a Second Amended Schedule C. A continued telephonic hearing on the Trustee's Motion to Compel Turnover will be scheduled on February 11, 2014, at 1:30 p.m.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###